Scott, J.
The action in the court below was in replevin, and was brought by the plaintiff in error to recover the possession of certain goods and chattels, to which he claimed to be entitled under a chattel mortgage executed thereon in his favor, by one Marvin S. Cotton. The defendant demurred to the plaintiff’s petition in the court below, and his demurrer was sustained, and judgment was thereupon rendered in favor of the defendant for damages, which were assessed by a jury, and for costs.
*293 ■ In sustaining this demurrer and in the rendition of this judgment it is claimed that the court below erred; and the questions in the case relate solely to the sufficiency of the petition in the. court below.
It appears from the petition, that the mortgage under which the plaintiff claimed a right of possession was executed to him by Cotton, on the 13th of May, 1865, to secure the repayment of three hundred dollars, then borrowed of him by Cotton. The condition of defeasance was the repayment of this sum, with interest, on or before the 1st- of February, 1866, until which time the mortgage - provided for leaving the property in the possession of the mortgagor, but with a stipulation that if Cotton should commit waste, misuse, or attempt to secrete or remove the property, the mortgagee, Ashley should be authorized to take immediate possession thereof, in the same manner as though the payment was then due. The petition avers that the three hundred dollars remains wholly unpaid, and that the defendant, on the 19th day of June, 1865, levied upon the property three writs of execution in favor of certain creditors of Cotton, for about the sum of three hundred dollars, and thereupon took the property into his own possession, and removed the same out of the possession of Cotton, and from the township of Richmond, where Cotton resided, and with the clerk of which plaintiff’s mortgage had been filed.
Plaintiff’s action was commenced on the 23d of June, 1865; and in support of the demurrer it is claimed by counsel for defendant that this portion of plaintiff’s petition shows that his debt had not then become due, that the condition of the mortgage had not been broken, that he had no right to the possession of the property mortgaged, and therefore could not maintain his action of replevin. We think this position is untenable. The creditors of the mortgagor could levy only upon the interest of their debtor in the mortgaged property, and as against the mortgagee, their right of control over the property in virtue of their levy could be no greater than that of their debtor, the mortgagor. By the terms of the mortgage, Cotton had no right to secrete, remove, or part with the *294 possession of the property. Any attempt to do so gave th« mortgagee an immediate right of possession as fully as though his debt had become due. The removal of the property from the possession of the mortgagor, under the circumstances, and in the manner stated in the petition, was a breach of the condition upon which the mortgagor’s right of possession depended, and gave the plaintiff, if his mortgage was valid, a right to replevy it. The case of Curd v. Wunder (5 Ohio St. 92), cited by counsel for defendant, is inapplicable; for the mortgage in that case contained no such stipulation as that which we have just stated.
The amendatory act of April 11th, 1863 (S. & S..293), after providing for the filing of chattel mortgages with the township clerk, requires, “That the mortgagee, before the filing of such instrument with the township clerk, . . . shall enter thereon a true statement, in dollars and cents, of the amount of his claim, and that it is just and unpaid; which said statement shall be verified before some justice of the peace, or. other officer authorized to administer oaths.”
The petition in the court below alleges, in detail, a full compliance with this requirement of the statute, that such statement was indorsed by the plaintiff on his said mortgage on the day of its date, before filing the same in the township clerk’s office, and that said statement was then and there verified by his affidavit made before L. D. Marsh, a duly appointed and qualified commissioner and notary public in and for the county of Ashtabula, and resident therein, whose certificate of such verification was then and there duly stamped etc. A copy of the mortgage, and of the statement and verification indorsed thereon,, is attached to and made part of the petition; from which it appears that the attestation or certificate of the notary that the statement was subscribed and sworn to by the plaintiff before him, though purporting to be signed by the notary in his official capacity, was not authenticated by his notarial seal.
In support of the demurrer it is claimed that this want of a notarial seal renders the verification of the indorsed statement defective, and is such a failure to comply with tha *295 requirements of the statute as must wholly invalidate the mortgage. Was the demurrer properly sustained for this reason \
The statute, as we have seen, only requires that the statement required to be entered on the mortgage shall in fact “ be verified before some justice of the peace, or other officer authorized to administer oaths.” It contains no provision in regard to the certifying or authenticating of such verification. It is no doubt proper, and perhaps, for the purpose of notice to the world, it is necessary, that such verification should, on its face, purport to have been made under oath, and before an officer properly authorized to administer oaths. And upon the trial of an issue of fact as to whether such verification had actually been duly made, it may be that the absence of a notarial seal by way of authentication would throw the burden of proof upon the mortgagee. But the demurrer here presents no such question. It admits that the “ statement ” was m fact verified by the oath of the mortgagee, before an officer authorized to administer such oath, and who has certified the fact under his official signature, and draws in question merely the formal sufficiency of snch authentication. The petition of the plaintiff, then, shows no want of compliance with the letter of the statute, nor do we think its spirit and purpose (which have reference to notice merely) required an authentication by the notary under his official seal.
It is trne that the act of May 1, 1852 (S. & C. 876), provides “that each notary public, before entering upon the duties of his office, shall provide himself with an official seal, with which he shall authenticate his official acts; ” but this provision, we apprehend, has reference to those “official acts ” of attestation and protestation which come within the peculiar sphere of his office, and which by such authentication become evidence of the facts stated therein. Fund Com. of Muskingum County v. Glass et al., 17 Ohio, 542.
By the act of March 13, 1856 (S. & C. 873), a general power is conferred on each notary public, “ within the county in which he may reside, to administer all oaths required or *296 authorized by law to be administered in this State.” It is evident that in many cases the law authorizes and requires an oath to be administered, but neither requires nor contemplates the authentication of the fact that such oath was administered by a certificate of any kind. The validity and legal effect of such oaths do not depend upon a subsequent authentication. Here the statute simply requires that the “ statement ” shall be verified, that is, sworn to, before some officer authorized to administer oaths. And in the absence of any requirement as to a certificate, we think it is suflicient that the proper affidavit be in fact made, and that for the purpose of notice to the world no formal solemnities are necessary other than the signature of the affiant to the proper affidavit, and the official statement of the officer that the affidavit was subscribed and sworn to before him.
We think the court below erred in sustaining the demurrer to the petition, and therefore reverse its judgment, and remand the case for further proceedings.
Bbinkebhoef, C. J., and Welch, White, and Day, JJ., concurred.